**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:18-cv-03097-DDD-NRN

KENDALL ALLRED,

   Plaintiff,

v.

INNOVA EMERGENCY MEDICAL ASSOCIATES, P.C., and
STEPHEN SHERICK,

   Defendants.

---

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

This case is before the court on Defendants Innova Emergency Medical Associates, P.C. ("Innova") and Stephen Sherick's motion for summary judgment. Doc. 87. The question presented by the motion is whether a Physician Employment Agreement (the "Agreement") between the Defendants and Plaintiff Kendall Allred encompasses an Executive Addendum attached to the Agreement. If so, the Agreement's integration clause bars Dr. Allred's claim for breach of a prior oral agreement between the parties. The existence of an enforceable written contract between the parties would likewise bar the bulk of Dr. Allred's remaining, quasi-contract claims. Because the Agreement unambiguously incorporates by reference the Executive Addendum the court GRANTS Defendants' motion.

### BACKGROUND

Innova is an emergency medicine "contact" group. It staffs, manages, and supports emergency rooms primarily in rural areas. Doc. 87, ¶ 2;

Doc. 88 at 2. Mr. Sherick is Innova's founder and CEO. Doc. 43, ¶ 11. Dr. Allred is a physician who specializes in emergency medicine. *Id.* ¶ 6.

Mr. Sherick began recruiting Dr. Allred to join Innova in early 2015 to perform both medical and administrative duties. Doc. 89, ¶¶ 2, 8. During that time, Dr. Allred and Mr. Sherick engaged in extensive negotiations about the terms of his employment in early 2015. *Id.* Dr. Allred says that during these negotiations, oral promises were made:

> [Mr.] Sherick promised to pay me profit sharing ranging from 20 to 50 percent from hospitals where I worked, depending on my level of involvement and whether I originated the hospitals as Innova clients. [Mr.] Sherick also promised me equity in Innova of at least two percent per year, up to a maximum of 20 percent, if I successfully helped with securing new business.

*Id.* ¶ 3. He admits, however, that Mr. Sherick "did not want to commit in writing to percentages of facility profit sharing or company equity prior to seeing [Dr. Allred's] performance." Doc. 87 at ¶ 18; Doc. 88 at 2.

The parties executed the Agreement just before Dr. Allred started at Innova in June 2015. Doc. 87 at ¶ 5; Doc. 88 at 2; Doc. 43 at ¶ 24. The Agreement required Innova to pay Dr. Allred, subject to certain conditions, $190 per hour for the services he rendered as a physician. Doc. 87, Ex. C at INNOVA_000007, ¶ 11; *id.* at INNOVA_000011. The $190-dollar rate for physician services, and the conditions on that rate, were set out in "Exhibit A" to the Agreement, which was separately executed by the parties. *Id.* at INNOVA_000011. The Agreement expressly incorporated Exhibit A by reference. *Id.* INNOVA_000007, ¶ 11.

Also attached to the Agreement and separately executed by the parties was an "Executive Addendum." *Id.* at INNOVA_000012–13. The Executive Addendum delineates Dr. Allred's executive duties at Innova,

2

which included "actively participat[ing] in [Innova's] Executive Management Team discussions and strategic planning," among other duties. *Id.* at INNOVA_000012. In exchange for his service as an executive, Innova promised to pay Dr. Allred "an Executive Administrative Hourly Rate of $190/hour." *Id.* at INNOVA_000013, ¶ 2. The Executive Addendum also contained terms concerning "Future Equity" and "Profit Sharing". *Id.* at INNOVA_000013, ¶¶ 2(a) & 2(c). The profit-sharing provision says,

> after a one hundred eighty (180) day period, [Dr. Allred] shall be eligible to receive a Facility Profit Sharing Bonus as a percentage of monthly profits earned from any facilities where [Dr. Allred] exercises an important administrative presence … . The percentage of monthly profits will vary based [sic] level of involvement in the overall operations and financial solvency of said facilities. The CEO and [Dr. Allred] will agree upon these percentages as defined in any Addendums to follow.

*Id.* at INNOVA_000013, ¶ 2(a). The future-equity provision says,

> [Dr. Allred] shall be eligible for a percentage of Contractor equity after one (1) year with the company. … Total percentage of equity after the first year will be established by negotiation between the CEO and [Dr. Allred] at that time.

*Id.* at INNOVA_000013, ¶ 2(c). The Executive Addendum is incorporated by reference in the Agreement. In paragraph 10, the Agreement says

> [Dr. Allred] shall serve as executive officer of the company with general duties and compensation outlines in the EXECUTIVE ADDENDUM.

*Id.* at INNOVA_000007, ¶ 10.

The other provisions of the Agreement significant for Defendants' motion are its integration, severability, and choice-of-law clauses. The integration clause says that "This Agreement constitutes the entire

3

Agreement by and between the parties and cannot be altered or amended except by an Agreement in writing executed by all of the parties hereto." *Id.* at INNOVA_000008, ¶ 13. The severability clause says, "If any provision of this Agreement is determined to be void or invalid for any reason, the remaining provisions shall remain full [sic] effective." *Id.* at INNOVA_000009, ¶ 17. And the choice-of-law provision says, "It is understood and agreed by and between the parties that this Agreement, to the fullest extent possible, is to be construed in accordance with the laws of the State of Colorado." *Id.* at INNOVA_000008, ¶ 16.

After working for Innova for a time, the Defendants offered Dr. Allred amounts of profit sharing and equity. Doc. 87 at ¶¶ 28–29; Doc. 88 at 2. Dr. Allred deemed Defendants' offer below the orally agreed-upon ranges and tendered his resignation on April 17, 2017. Doc. 87 at ¶¶ 28–30; Doc. 88 at 2.

Dr. Allred then filed this suit. He seeks the profit and equity he believes he's owed, and asserts claims for breach of oral contract; breach of the covenant of good faith and fair dealing; promissory estoppel; quantum meruit; two violations of the California labor code; fraud; negligent misrepresentation; and accounting. *See* Doc. 43.

He originally filed suit in California state court, and Defendants removed the case to the United States District Court for the North District of California. On Defendant's motion, the Northern District of California transferred the case to this Court because the Agreement requires any suit between the parties arising from it to be filed in Colorado. Doc. 26 at 9.

Currently before the Court is Defendants' motion for summary judgment. Defendants argue that the Agreement supersedes any previous oral contract between the parties. Defendants likewise argue that the

4

Agreement bars Dr. Allred's quasi-contract claims (promissory estoppel and quantum meruit), because no such claim is viable when a written contract governs the parties' dispute. As for Dr. Allred's claims for violation of the California labor code, those claims, according to the Defendants, are precluded by the Agreement's Colorado choice-of-law provision. And judgment is proper on the misrepresentation claims, Defendants argue, because, at best, they rely on promises of future action, not then-existing material fact.

## DISCUSSION

Summary judgment is proper "if but only if the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009). In reviewing Defendants' motion, the court views "the facts and all reasonable inferences those facts support in the light most favorable" to Plaintiffs. *Id.* at 1189–90. "An issue of material fact is genuine only if the nonmovant presents facts such that a reasonable factfinder could find in favor of the nonmovant." *S.E.C. v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (alteration adopted).

### I.   The Claim for Breach of an Oral Contract

Summary judgment is proper on Dr. Allred's claim for breach of oral contract because the Agreement between the parties superseded any previous oral agreements between them as a matter of law. Under Colorado law,[1] prior oral agreements are superseded by a written contract

---

[1]   The Agreement contains a Colorado choice-of-law provision: "It is understood and agreed by and between the parties that this Agreement, to the fullest extent possible, is to be construed in accordance with the laws of the State of Colorado." Doc. 87, Ex. C, at INNOVA_000008, ¶ 16. A federal court sitting in diversity applies the conflict of law rules of the

between the parties if the oral and written contracts concern the same subject matter. *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011) ("Evidence of prior or contemporaneous agreements or negotiations may not be used to contradict a written instrument or to vary the terms of a written agreement.") (citing Restatement (Second) of Contracts § 213 cmt. a (1979)); *see also* Restatement (Second) of Contracts § 213 ("A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope."). That is this case.

The parties don't dispute they entered into the Agreement. *See* Doc. 87, ¶ 5; Doc. 88 at 2 (admitting this fact). Nor do they dispute that the Agreement contains an integration clause. That clause expresses the parties' intent that the Agreement—not prior discussions or oral agreements—govern the terms of Dr. Allred's employment with Innova: "This Agreement constitutes the entire Agreement by and between the parties and cannot be altered or amended except by an Agreement in writing executed by all the parties hereto." Doc. 87, Ex. C at INNOVA_000008, ¶ 13; *see also Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 72 (Colo. 1991) ("Integration clauses generally permit contracting parties to limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document.").

---

forum state, Colorado. *See Klaxon Co. v. Stentor Electric Manufacturing,* 313 U.S. 487, 497 (1941); *see also Security Service Federal Credit Union v. First American Mortgage Funding, LLC,* 861 F.Supp.2d 1256, 1267 (D. Colo. 2012). And under Colorado law, "choice of law provisions are ordinarily given effect as they are considered a clear manifestation of the parties' intentions." *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 822 (Colo. App. 2016). Colorado law therefore governs interpretation of the Agreement.

In the light of these undisputed material facts, Dr. Allred's claim for breach of a prior oral contract cannot survive. He alleges that the parties entered into an oral agreement that, in exchange for his work for Innova, he would be entitled to receive a share of Innova's profits each month and two-percent equity in the company each year. Doc. 43, at ¶¶ 41–46. But any such oral contract contradicts, and is accordingly superseded by, the Agreement. In contrast to the oral contract alleged by Dr. Allred, the parties' Agreement says that Dr. Allred will be compensated at $190 per hour for "scheduled 12 hour shifts" at Innova's clinics and for Dr. Allred's executive administration work for Innova. Doc. 87, Ex. C at IN-NOVA_000011; *id.* at INNOVA_000013, ¶ 2. And the Executive Addendum to the Agreement provided that Dr. Allred "shall be eligible for a percentage of … Equity after one (1) year with the Company." *Id.* at IN-NOVA_000013, ¶ 2(c). But the Agreement does not require Dr. Allred be given any fixed percentage of profits or equity in the company. Thus, any prior oral contract between the parties that compensated Dr. Allred with equity or profits, is superseded by the Agreement and its integration clause as a matter of law.

Dr. Allred argues that summary judgment isn't proper because it is ambiguous whether the integration clause of the Agreement applies to the Executive Addendum. He says it is unclear whether the term "agreement" in the integration clause includes the Executive Addendum.

"Interpretation of a written contract and whether such a contract is ambiguous are questions of law." *Specialized Grading Enterprises, Inc. v. Goodland Const., Inc.*, 181 P.3d 352, 355 (Colo. App. 2007) (citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo. 1984)). A court's goal in interpreting a contract is giving effect to the intent of the parties. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Man-*

*ager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). Absent a finding of ambiguity, this goal is accomplished by giving effect to the text and structure of the contract. *Id.*

The Agreement's text and structure make clear that its terms include the Executive Addendum. Most significantly, paragraph ten of the Agreement incorporates by reference the Executive Addendum: "It is agreed that after a one hundred eighty (180) period, [Dr. Allred] shall serve as executive officer of the company with the general duties and compensation outlined in the EXECUTIVE ADDENDUM." Doc. 87, Ex. C at INNOVA_000007, ¶ 10. This is a clear expression by the parties they "had knowledge of[, and] assented to"—and thereby incorporated— the terms of the Executive Addendum into the Agreement. *See Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010) (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30.25, at 234 (4th ed. 1999)). Incorporation of the Executive Addendum dovetails with the Agreement's stated purpose: to delineate the clinical and administrative duties of Dr. Allred at Innova. Doc. 87, Ex. C at INNOVA_000003 (first "whereas" clause). Indeed, the very use of the word "addendum"—which means "something to be added, usu[ally] to a document; esp[ecially] a supplement to a … contract," ADDENDUM, Black's Law Dictionary (11th ed. 2019)—evinces an unambiguous intent that the Executive Addendum is part of the Agreement and subject to its integration clause. The parties' use of the word addendum necessarily means it was meant to be addended *to something*—the Agreement.

Dr. Allred argues the Executive Addendum is a separate contract because it contained a separate signature block for the parties. Doc. 88 at 12. This argument is contradicted by the same fact: The Agreement treats the Executive Addendum as part of the Agreement itself. It is also

8

contradicted by the fact that the parties also separately executed Exhibit A to the Agreement, which Dr. Allred does not dispute is part of the Agreement, and that the fact that the documents were all signed on the same date. Doc. 87, Ex. C at INNOVA_000011. Indeed, as Defendants point out, multiple signature blocks are common to modern contracts like so many other belt-and-suspenders drafting techniques. *See* Doc. 92 at 6 (citing Eric A. Zacks, Contracting Blame, 15 U. Pa. J. Bus. L. 169, 171 (2012)).

Dr. Allred also argues that, because they only require future negotiation, the profit and equity provisions of the Executive Addendum are unenforceable agreements to agree, and, because they are essential to the parties' bargain, render the Agreement void due to their unenforceability. Doc. 88 at 7–13. Dr. Allred is perhaps correct that the equity and profit-sharing provisions, which require future negotiations, are unenforceable under Colorado law. *Beal Corp. Liquidating Tr. v. Valleylab, Inc.*, 927 F. Supp. 1350, 1372 (D. Colo. 1996) (holding that "letter of intent" that "imposed only the obligation to negotiate in good faith" was an unenforceable agreement to agree under Colorado law); *but see* Restatement (Second) of Contracts § 33 (stating modern rule that contracts with open terms can be enforceable depending on the materiality of the open terms, the conduct of the parties, and the precision of the remaining contract terms). But even if the equity and profit-sharing provisions are void, they are severable under the severability clause: "If any provision of this Agreement is determined to be void or invalid for any reason, the remaining provisions of this Agreement shall remain effective." Doc. 87, Ex. C at INNOVA_000009, ¶ 17. Dr. Allred argues that these provisions are "so basic to the whole scheme of the" Agreement that the severability clause can't apply and the Agreement "must stand or fall as an entirety." Doc. 88 at 13 (quoting *NLRB v. Rockaway News Supply Co.,*

*Inc.*, 345 U.S. 71, 78 (1953)). But that principle is taken from an inapplicable context—labor law. And under Colorado *contract* law a "'severability' … clause [permits] void or otherwise unenforceable provisions … [to] be severed from the contract." *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-CV-02272-WJM-KLM, 2011 WL 2791338, at *12 (D. Colo. July 15, 2011). Dr. Allred does not dispute that he agreed to a contract that expressly provided for severability. So even if the equity and profit-sharing provisions are unenforceable, the Agreement still stands.

Bottom line: the Agreement is an unambiguous, fully integrated contract that incorporates both Exhibit A and the Executive Addendum. It thus supersedes the alleged oral agreement between the parties, and Dr. Allred's claim based on that alleged oral agreement cannot proceed.

## II.  Common Law Claims

### A.  Claim for Breach of the Covenant of Good Faith and Fair Dealing

Dr. Allred concedes summary judgment is proper on his claim for breach of the covenant of good faith and fair dealing. Although Colorado law implies a covenant of good faith and fair dealing into commercial contracts, the covenant has not been extended to employment contracts like the Agreement. *Donohue v. Unipac Serv. Corp.*, 847 F. Supp. 1530, 1535 (D. Colo. 1994) (collecting cases); *see also Farmer v. Cent. Bancorporation, Inc.*, 761 P.2d 220, 222 (Colo. App. 1988) ("The argument lacks merit. An implied covenant of good faith and fair dealing found in some commercial contracts does not extend to at-will employment contracts."). Accordingly, judgment on this claim is proper.

### B. Claims for Promissory Estoppel and Quantum Meruit

Summary judgment is proper on Dr. Allred's claims for promissory estoppel and quantum meruit because the Agreement governs the relationship between the parties and thus precludes these claims. The claim for promissory estoppel alleges that Dr. Allred detrimentally relied on Defendants' promises that he would receive a percentage of profits and equity in Innova in exchange for his work. Doc. at ¶¶ 52–57. His quantum meruit claim alleges that Defendants were unjustly enriched by keeping the profit and equity they promised Dr. Allred. *Id.* at ¶¶ 58–63. But under Colorado law, "recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract." *Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007). So "promissory estoppel is applicable only in the absence of an otherwise enforceable contract." *Scott Co. of California v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1991), *overruled on other grounds by Lewis v. Lewis*, 189 P.3d 1134 (Colo. 2008). The same is true for quantum meruit. This is because "quantum meruit is a theory of contract recovery that invokes an implied contract when the parties either have no express contract or have abrogated it." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000). Because the parties entered into an express written contract, judgment is proper on Dr. Allred's claims for promissory estoppel and quantum meruit as a matter of law.

### C. Claims for Promissory Fraud and Negligent Misrepresentation

Dr. Allred has adduced no evidence of promissory fraud or negligent misrepresentation. These claims, according to Dr. Allred, are based on Defendants' promises that they he would receive profits and equity in Innova if he agreed to work for Innova. Doc. 43, at ¶¶ 75, 85; Doc. 88 at

11

18–19. But under Colorado law, misrepresentation claims "cannot be predicated upon the mere non-performance of a promise or contractual obligation or upon failure to fulfill an agreement to do something at a future time." *State Bank of Wiley v. States*, 723 P.2d 159, 160 (Colo. App. 1986) (citations omitted). This is precisely what Dr. Allred alleges: a promise of *future* profit. And although "a promise concerning a future act, … coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud," *Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo. App. 2005), Dr. Allred does not dispute that, when they negotiated his employment, Mr. Sherick refused to commit to any specific profit-sharing or equity amount. *See* Doc. 87, at ¶ 17 (citing testimony of Mr. Sherick that he "told Plaintiff that he did not want to commit to mandatory minimums for profit-sharing ranges and equity percentages before seeing how Plaintiff performed for Innova."); Doc. 88 at 2 (admitting this fact). So, whatever promises Mr. Sherick may have made at some point, by the time Dr. Allred signed the Agreement, it was clear that Mr. Sherick was not making any binding promises about these issues. To the extent Dr. Allred relied on those prior promises, that reliance was not reasonable. *See Nelson*, 121 P.3d at 345 (reliance on alleged misrepresentation must be justifiable).

### III.   Claims for Breach of the California Labor Code and Accounting

Dr. Allred concedes that, if the Agreement encompasses the Executive Addendum, then his claims for violation of the California Labor Code are barred by the Agreement's Colorado choice-of-law provision. Doc. 88 at 17; *see also Lester v. Gene Express, Inc.*, No. 09-CV-02648-REB, 2010 WL 3941417, at *3 (D. Colo. Sept. 27, 2010) (granting summary judgment on claims for violation of New Jersey and Pennsylvania

labor law on ground that a Colorado choice-of-law provision in the parties' contract governed their dispute). As explained above, the Agreement includes the Executive Addendum, so summary judgment on Dr. Allred's claims for violation of the California Labor Code is proper.

Judgment on Dr. Allred's claim for accounting is also proper. Dr. Allred asserts his claim for accounting under California law, which, unlike other jurisdictions, permits a claim for accounting as a standalone cause of action. *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013), *as modified on denial of reh'g* (Mar. 7, 2013). But as explained, Colorado law governs the parties' dispute. And under Colorado law, accounting is an equitable remedy, derivative of a separate cause of action, not a standalone claim. *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo. App. 1991). So judgment is proper on this claims because it is actually "derivative remedy that depends on proving a substantive cause of action." *Dalkita, Inc. v. Devin Mills Consulting, LLC*, No. 18-CV-01398-PAB-SKC, 2019 WL 1242432, at *3 (D. Colo. Mar. 18, 2019) (citation omitted).

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Doc. 87) is GRANTED. The Clerk shall enter judgment for Defendants and close the case.

DATED: June 16, 2020.                BY THE COURT:

_____
Daniel D. Domenico
United States District Judge